## COMMONWEALTH *v.* JOHNSON et al.
## Same *v.* SMITH et al.

The Commonwealth is not included in the general words of a statute of limitations.

The sureties of a prothonotary, clerk, register, or recorder, are not discharged from the claims of the Commonwealth for taxes on writs, &c., collected by such officer, under the act of 1830, by neglect to bring suit until after the five years limited for actions on official bonds generally, by the act of 1803.

Where a writ of error has been sued out by the Commonwealth contrary to agreement, it will be quashed with costs.

IN error from the Common Pleas of Dauphin county.

*June* 30. These were two actions of debt, the first against the sureties of the prothonotary of the Common Pleas of York, and the other against the sureties of the clerk of the Orphans' Court, register and recorder of Monroe, to recover the amount of taxes on writs levied by the act of 1830, and received by the respective officers while in office. The condition of the bond of the prothonotary was, that if he should faithfully execute the additional duties of the said office, prescribed by the act of 1830, &c., and should pay over all taxes received under said act, and in all other particulars, conform to said act, then, &c. To this the plea was the statute of limitations. The bond was dated in 1830, and the suit was brought in 1845. But when the moneys were received did not appear from the paper book. The act of 1803, which is incorporated in the act of 1830, limits the action against the sureties to five years from the date of the recognisance. The court (ELDRED, P. J.) gave judgment *pro forma* for the defendants.

The condition of the bond in the second case was, that the

clerk, &c., should faithfully perform, &c., and account for the moneys and taxes which should come to his hands during his continuance in office, as well in pursuance of the act of 1830, as of every other act of Assembly relating to the said respective offices, and should deliver up, &c., &c. The same plea was entered in this case as in the other, and judgment for the plaintiff was given by consent, to be taken off if this court should decide in Commonwealth *v.* Johnson, that the statute of limitations debarred the Commonwealth. The Commonwealth sued out a writ of error in each case, and in the latter a motion to quash was argued with the principal question.

*Briggs* and *Parke*, for plaintiff in error, contended that statutes of limitation do not extend to the Commonwealth, and this rule applies as well to personal actions against a surety on an official bond, as to entries on land and similar cases, unless the Commonwealth be expressly named, and her rights thereby waived. Bagley *v.* Wallace, 16 Serg. & Rawle, 245; Commonwealth *v.* Baldwin, 1 Watts, 54; McKeehan *v.* Commonwealth, 3 Barr, 151. That although the 4th section of the act of 28th March, 1803, to which reference is made in the 9th section of the act of 6th April, 1830, under which this bond was given, uses the words, whenever the Commonwealth or any individual or individuals shall be aggrieved, &c., and further provides that no suits shall be sustained against the sureties, &c., of the sheriff and coroner, unless brought within five years after the date of their bonds, it is believed the legislature did not intend to limit the Commonwealth in any suit she might be compelled to bring for her own use, on any of these bonds, but that it was intended to confine these restrictions and limitations entirely to suits brought for the use of individuals. Because all official bonds are taken in the name of the Commonwealth, and all suits brought upon them must be brought in the name of the Commonwealth. 2. By the act of 1811, it is made the duty of the auditor-general to settle and adjust all public or official accounts between the Commonwealth and any individual or individuals. And it is further made the duty of this officer, by the act of 29th March, 1813, to proceed to recover, by due course of law, any amount or balance due to the Commonwealth, upon the settlement of an account, under the act of 1811. And upon failure to do so, by neglect or otherwise, the Commonwealth ought not to be prejudiced or debarred from recovering what is justly due to her by the laches or negligences of any of her officers, as it is well settled that the

laches or negligences of the public officers, however gross, do not discharge the sureties from an official bond ; United States *v.* Kirkpatrick, 9 Wheat. 720 ; United States *v.* Vanzandt, 11 Wheat. 184 ; Dox *v.* Postmaster-General, 1 Peters, 326.

*Alricks,* for defendants in error.—The defendants are sureties, and it was agreed in the court below that this case should depend upon the result of the case of the Commonwealth against Donnell and Johnson ; the writ should therefore be quashed : 3 Serg. & Rawle, 411 ; 2 Bin. 167 ; 8 Serg. & Rawle, 528 ; 2 Penna. Rep. 496 ; 3 Ibid. 532.

The act of 6th April, 1830, (Dunlop's Digest, 439,) is the first act ever passed taxing proceedings in courts. The 9th section requires security to be given by the several officers, "in one-third of the amount fixed by law for sheriffs' bonds," by the act of 28th March, 1803 ; and directs that "the effect, rights and remedies of said bond shall be governed by the provisions of said act of 1803." The act of 1803, (Dunlop, 170,) limits the liability of the sureties to be sued, *to five years* after the date of the bond. The defendants. are sureties ; the bond is dated in 1830, and not sued until 1846. The case of the Commonwealth *v.* McKeehan, 3 Barr, 151, does not rule this case, although on an official bond, the defence was put specially on the act of 1798, which speaks of a "person or persons," and which, according to the case of The Commonwealth *v.* Baldwin, in 1 Watts, 54, would not bar the Commonwealth. But the act of 1803 expressly bars the *Commonwealth* or any individual in maintaining a suit against a surety after five years. In the Commonwealth *v.* McKeehan, the acts of 1830 and 1803 were not relied on or referred to, probably because they are not classed in our Digests among the acts of limitation ; but the act of 1803 is as much an act of limitation as the act of 1798. The case before the court falls within the exception mentioned in the opinion of the court in McKeehan's case, where they say that the Commonwealth is not barred, "unless expressly named." Here the Commonwealth is expressly named, and the case is consequently clear of difficulty.

*June* 30. BELL, J.—These are actions against the sureties of prothonotaries, upon their official bonds, brought by the Commonwealth to recover the several sums received by the principals, while in office, by virtue of the act of 6th April, 1830, entitled "An act for the levy and collection of taxes upon proceedings in courts and in the offices of register and recorder, and for other purposes."

The first of these bonds, it is conceded, was taken in pursuance

of the directions of this act; but this is denied of the second, which the Commonwealth affirms was given under the general authority of the act of 1798, though unquestionably with an eye to the provisions of the late statute.

In both cases the defendants pleaded shortly, "act of limitations," and the only question presented in the court below was, whether the proviso of the fourth section of the act of 28th March, 1803, requiring sheriffs and coroners to give bonds for the faithful execution of their respective offices, and prescribing the form of action to be brought thereon, extends to and embraces sureties in bonds given by officers to the Commonwealth; and to any individual who may be aggrieved by the misconduct of any sheriff or coroner, who may bring actions against them and their sureties upon their bonds and recognisances, for the recovery of damages, "Provided that such suit or suits against such sureties, their heirs, executors, or administrators, shall not be sustained by any court of this Commonwealth, unless the same shall be instituted within five years after the date of such obligation or recognisance." To secure payment into the public treasury of the tax collected under the act of 1830, by the officers named therein, they are required to give bond, with sureties, to the Commonwealth, in one-third of the amount fixed by law for sheriffs' bonds in the respective counties, by the act of 28th of March, 1803, "to be received and admitted in evidence, according to the provisions of said law, the condition of which obligation shall be that the said officer so bound shall and will, truly pay over all the taxes demanded and received under this act, to the state treasurer, and in all other particulars shall conform to the provisions of this act, and the *effect, rights, and remedies of said bond shall be governed by the provisions of the said act of the* 28th *of March,* 1803." It is by force of this last clause the defendants here claim to be protected—more than five years having run between the date of the respective bonds and the institution of these suits.

It would be more than vain again to go over the ground so ably occupied by the Chief Justice in The Commonwealth *v.* Baldwin, 1 Watts, 54, or to re-examine the cases reviewed by him, which have settled on grounds of public policy, that no statute of limitations will bind the Commonwealth, unless explicitly or impliedly named therein. The principle deducible from all the cases, English and American, is, that the legislature shall not be taken to have postponed the public right to that of an individual, unless such an intent be manifested by express words or irresistible implication, and this principle is peculiarly applicable to a plea of the statute

of limitations, interposed to bar a public claim.   I am not aware
of any judicial construction of the act of 1803 in reference to this
principle.   If, however, it be admitted that its clause of limitation
would operate to bar a suit by the Commonwealth, it is by no
means clear that the legislature intended to engraft this quality
upon the act of 1830, by the use of the words, "effect, rights, and
remedies of said bond."   Full operation may be given to these
terms by referring them to the object of the bonds contemplated by
the act, the rights to be secured thereby, and the peculiar form of
remedy afforded by the old act, without making them a conduit for
infusing into the late statute a doctrine at least partially destructive
of the remedy.   When we recollect that this would be introductory
of a new feature unknown to the prior and subsequent legislation
had in reference to the official bonds of these officers—for it is not
to be found either in the act of 1798 or those of 1832 and 1834,
relating to the bonds of prothonotaries, clerks of courts, registers
and recorders—and that it is in violation of the long-recognised
axiom, that the public right cannot be destroyed or compromised
by the neglect of the public agent, nothing short of language
clearly and explicitly pointing to a legislative intent in conformity
with the construction demanded by these defendants, could justify
our sanction of it.   We look in vain to the act of 1830 for language
of this efficacy.   To say the very least of the terms there employed,
they are uncertain and ambiguous, if not inapt to express a mean-
ing so important in its consequences upon the pecuniary interests
of the community, not likely, as has been justly observed, to be
jealously watched and enforced by agents uninvigorated by the
stimulus of private gain.   Nor is it an argument unworthy of con-
sideration that the defence here set up is heard of for the first time,
in the course of seventeen years which have elapsed since the
enactment of the statute.   In McKeehan v. the Commonwealth,
3 Barr, 151, decided at the last term of this court for this district,
when the question was raised whether the limitation contained in
the act of 1798 extended to bar the Commonwealth of just such a
claim as the present, the act of 1830 was not even dreamed of as
affording any such ground of defence.   Whether this was because
it was regarded as inefficacious for such a purpose, or unknown to
the bar and the bench as an enactment restrictive of these public
actions, it equally proves the act had never presented itself to the
mind of the profession as a statute of limitations, and we think,
after full consideration, and looking to the grave doubt that at-
taches upon it in this connection, it would be hazardous so to pro-

nounce it. If it be thought right and politic to extend the principle, based on limitation of time against the sovereign—a subject upon which there is perhaps conflicting opinion—doubtless those upon whom is devolved the power and responsibility of making the law, will so decree it in terms not to be mistaken; but we cannot, in a doubtful case, when construing an obscurely worded act of Assembly, little, if at all expressive of such a legislative will, undertake to determine such to be the law of Pennsylvania.

The judgment of the court below, rendered in the case of the Commonwealth *v*. Johnson and Donnell, which sustained the defence *pro forma*, must therefore be reversed. This decision renders it unnecessary to consider the question raised here, in the second case, whether the bond executed by Samuel Snyder and his sureties was given under the act of 1798, or the act of 1830. Either way the judgment rendered below, in this case, is correct; but as the writ of error was sued out by the Commonwealth in violation of the agreement of the parties, it must be quashed, otherwise the defendants might be unjustly subjected to the costs of the proceeding in this court.

> Judgment in Commonwealth *v*. Johnson and Donnell reversed, and a *venire de novo* awarded. Writ of error sued out in Commonwealth *v*. Smith and Bell, quashed, with costs.