# Koering's Estate.

*Decedents' estates—Debt due to commonwealth—Lien on real estate—
Acts of February* 24, 1834, *P. L.* 70, *secs.* 21, 24; *June* 8, 1893, *P. L.* 392,
*and June* 14, 1901, *P. L.* 562.

Under the 21st and 24th sections of the Act of February 24, 1834,
P. L. 70, as amended by the Acts of June 8, 1893, P. L. 392, and June 14,
1901, P. L. 562, a debt due the commonwealth loses its lien upon the
decedent's real estate both generally and against heirs and devisees,
unless the commonwealth institutes proper proceedings within two
years after the death of the decedent, to continue the lien.

Section 21 and section 24 of the act of February 24, 1834, relate to
the same general subject, namely, the debts of decedents, and should
be construed together. There is a necessary and irresistible implica-
tion of a legislative intent that the limitation of lien provided in the
24th section should apply to all of the debts that are expressly men-
tioned in the 21st section, and are not excepted in the 24th section.

There is nothing in the Act of June 8, 1893, P. L. 392, or the amend-

atory Act of June 14, 1901, P. L. 562, that creates or revives a distinction between debts due to the commonwealth and those due to individuals so far as a lien upon real estate is concerned.

Argued May 8, 1907. Appeal, No. 218, April T., 1907, by the Commonwealth of Pennsylvania, from decree of O. C. Allegheny Co., Sept. T., 1903, No. 150, overruling exceptions to adjudication in estate of Theodore Koering, deceased. Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that in 1893, Theodore Koering was charged with certain escheat money, due the commonwealth. He died November 1, 1900, without having paid over this money. More than two years after Koering's death, his real estate was sold, and the proceeds became the fund for distribution in this proceeding. The commonwealth claimed out of the fund the escheat money due by the decedent.

The auditing judge disallowed the claim, but on exceptions the fund was distributed to the commonwealth.

On motion a reargument was allowed, and HAWKINS, P. J., filed the following opinion :

The claim presented in this case should be rejected on these grounds :

The commonwealth having been expressly named as one of the objects of litigation in the act of February 24, 1834, its claim is thereby taken out of the general rule of exemption from the running of the statute of limitation : State v. Crutcher, 2 Swan, 504. The 21st section of that act provides that, "All debts owing by any person within this State," shall be paid in a prescribed order, including " debts due the Commonwealth," which are placed last; and these are necessarily the same " debts " whose lien is limited by the 24th section of the same act to five years, unless an action at law be commenced and duly prosecuted. The fact that debts due the commonwealth were ordered to be paid last was said in Mitchell's Estate, 2 Watts, 87, to manifest an intention to abandon any supposed preference which the commonwealth might otherwise have had under the rule of common law. " The maxim of the common

law does not apply when from the whole Act a contrary intention can be collected." The whole scope and spirit of the act shows that it is intended to prevent heirs and purchasers from being surprised by claims against decedent himself not placed on the record in proper time: Cobaugh's Appeal, 24 Pa. 143. "The great object of the Act," said the court in Oliver's Appeal, 101 Pa. 299, "was to quiet the title of heirs and devisees, and purchasers from them, of lands derived from decedents. It was only necessary for the purchaser or mortgagee to resort to a single office, the prothonotary of the county, to ascertain whether or not any action had been brought or copy or statement of any judgment filed within the period of five years from decedent's death. If there was no mortgage or judgment at the time of his death and the office of the prothonotary was clear of any action or statement of demand, he might rest perfectly secured that his title was unincumbered by any debts or judgments against the estate of the decedent, whatever the nature of the judgment might be." Debts due the commonwealth were just as much within this purpose as those of its citizens. It was just as important to heirs, devisees and purchasers that the land should be freed from the lien of debts of this class as any other. They could not "rest perfectly secure" until debts of every nature had been satisfied. The right of the commonwealth to lien at all rises out of the system of statutory law of which this act is part, and it is as much bound by the rules prescribed for the administration of justice as any citizen · Attorney General v. Radloff, 10 Exch. 84, Pollock, C. B.; Mitchell's Estate, 2 Watts, 87. It is for this reason that the commonwealth is bound to present its claim on audit of the administrator's account: Mitchell's Estate, 2 Watts, 87; and there is just as much reason why it should bring an action to continue a lien which must otherwise cease to exist. An analogous case is found in that line of cases in which it has been held that the commonwealth gains no preference over other creditors when it fails to file the statement required by the act of 1827: Gladden v. Chapman, 188 Pa. 586. The policy of the law to facilitate the settlement of estates and unshackle titles and discourage secret liens is in the interest of public prosperity.

The commonwealth, having failed to bring action as prescribed by the act of 1834 and its supplements, has lost its lien.

*Error assigned* was disallowance of commonwealth's·claim.

*T. C. Noble*, with him *Richard B. Scandrett* and *James E. Barnett*, for appellant.—Statutes of limitation bar the commonwealth only when she is expressly named as being bound thereby: Com. v. Hutchinson, 10 Pa. 466; McKeehan v. Com., 3 Pa. 151; Com. v. Johnson, 6 Pa. 136; Bagley v. Wallace, 16 S. & R. 245; Pennsylvania Canal Co. v. Harris, 101 Pa. 80; Com. v. McDonald, 16 S. & R. 390; Com. v. Moorehead, 118 Pa. 344; Com. v. N. Y., etc., R. R. Co., 138 Pa. 58; Com. v. Baldwin, 1 Watts, 54.

We contend that the act of 1901 is (a) a statute of limitation, and (b) does not bar the commonwealth expressly nor by necessary implication: Kerper v. Hoch, 1 Watts, 9; Wallace's Appeal, 5 Pa. 103, 106; Hemphill v. Pry, 180 Pa. 593; Com. v. Baldwin, 1 Watts, 54; Com. v. Hutchinson, 10 Pa. 466; Ex parte Postmaster-General, L. R., 10 Ch. Div. 595; Bagley v. Wallace, 16 S. & R. 245.

*William M. Hall*, with him *Hall & Metcalf*, *William Metcalf, Jr.*, and *O. P. Metcalf*, for appellee.—At the end of the two-year period the lands of a decedent are discharged from the lien of the debts and are not assets for the payment of such debts, whether in the hands of the heirs or devisees, or purchasers: Kerper v. Hoch, 1 Watts, 9; Oliver's App., 101 Pa. 299; Cobaugh's App., 24 Pa. 143.

An analagy is found in the statutes governing public accounts: Gladden v. Chapman, 188 Pa. 586; Wilson & Son Silversmith Co.'s Estate, 150 Pa. 285; Arnold's Estate, 46 Pa. 277; Goodwin Gas·Stove & Meter Co.'s App., 117 Pa. 514; In re·Wilson, 4 Pa. 164.

There is an analogous principle laid down in Mitchell's Estate, 2 Watts, 87.

OPINION BY RICE, P. J., October 7, 1907:

The question involved is thus stated by appellant's counsel: Whether a debt due the commonwealth from a decedent is an indefinite lien upon real estate owned by him at his death, generally, or against heirs and devisees. It is settled by the decisions cited in their exhaustive brief that the legislature shall not be taken to have postponed a public right to that of

an individual, " unless such an intent be manifested by ex-
plicit terms (as it has been in the order of paying a decedent's
debts) or at least by a necessary and irresistible implication,"
and that this principle is applicable in the construction of
statutes of limitation : Commonwealth v. Baldwin, 1 Watts,
54; McKeehan v. Commonwealth, 3 Pa. 151; Commonwealth
v. Johnson, 6 Pa. 136.   By the twenty-first section of the Act
of February 24, 1834, P. L. 70, which prescribes the manner
in which the debts of decedents shall be paid, it is provided
that debts due to the commonwealth shall be paid last, and the
twenty-fourth section provided that " no debts of a decedent,
except they be secured by mortgage or judgment, shall remain
a lien on the real estate of such decedent longer than five years
after the decease of such debtor," unless certain things were
done by the creditor within that period.   That the legislature
had directly in mind, in this enactment relative to the estates of
decedents, debts due to the commonwealth, expressly appears
and does not depend upon mere inference.   The two sections
relate to the same general subject, namely, the debts of de-
cedents, and should be construed together.   Observing the
generality of the words " all debts," in the twenty-first section,
and of the words " no debts," in the twenty-fourth section,
noticing that in the former section there is manifested an in-
tention to abandon any supposed right of priority over debts
due individuals which debts due the commonwealth might
otherwise have had under the rule of the common law, ob-
serving further that in the latter section certain kinds of debts
are excepted and that debts due the commonwealth are not
mentioned in the exception, and bearing in mind that it is a
statute of repose as well as of limitation and was intended to
prevent devisees, heirs and purchasers from being surprised by
claims against the decedent not placed on record in proper
time, we conclude that the requirements of the common-law
rule of construction were fully met and that the limitation of
the twenty-fourth section applied to debts due the common-
wealth as well as to debts due to individuals.   In other words,
there is " a necessary and irresistible implication " of a leg-
islative intent that the limitation should apply to all of the
debts that are expressly mentioned in the twenty-first section
and are not excepted in the twenty-fourth section.   This con-

clusion is so well supported by the opinion filed by the court below after reargument that it is unnecessary for us to discuss that proposition further.

The legislature having abolished the distinction as to debts of decedents between those due to the commonwealth and those due to individuals, so far as lien upon real estate is concerned, the question arises, whether this distinction was revived by the Act of June 8, 1893, P. L. 392. This is a very different question from that which would be presented if the act of 1893 were the first legislation upon the subject of the limitation of the lien of decedents' debts, or were to be construed entirely independently of the act of 1834, and must be answered in the negative. And if the distinction was not revived by that act, it certainly was not by the amendatory Act of June 14, 1901, P. L. 562. The first section of the act of 1893, is a literal transcript of the twenty-fourth section of the act of 1834, except in these particulars: the word "two" is substituted for the word "five" in the designation of the period of limitation; the words "to judgment" are added after the words "duly prosecuted"; and there is added at the end of the section a clause relative to the duty of the prothonotary, which has no bearing whatever on the question before us. Leaving this last clause out of view (as we are justified in doing) the section, so far as it relates to the subject now under consideration, is a re-enactment in identical terms of the provisions of the twenty-fourth section of the act of 1834, except that the period of limitation is reduced from five to two years. This being so, and there being nothing in the context to show a contrary intent, we are warranted in presuming that it was intended by the legislature that it should take the place of that section in the general system of laws relative to executors and administrators and the estates of decedents of which it formed a part, and that no debts should be excluded from its operation that were not excluded from the operation of that section. The revival of the original law by the repeal of a repealing law resting, as it does, upon the presumption of legislative intent, does not occur in any case where the contrary intent appears, and we are of opinion that such contrary intent is apparent here.

The judgment is affirmed.