## In re TIDEWATER COAL EXCHANGE.

### DAVIS, Director General of Railroads, v. COYLE.

(Circuit Court of Appeals, Second Circuit. February 20, 1922.)

No. 195.

1. **Railroads ⬿5½, New, vol. 6A Key-No. Series—Director General, in claiming money arising out of operation, acts in governmental capacity.**

   The Director General of Railroads, in claiming on behalf of the United States money arising out of the operation of the railroads, is seeking to recover public money, and is acting in a governmental capacity.

2. **Bankruptcy ⬿349—Claim for freight charges due Railroad Administration entitled to priority.**

   Unpaid freight charges for shipments by railroad during federal control are property of the United States, and a claim therefor is entitled to priority, under Bankruptcy Act, § 64b (5), being Comp. St. § 9648, and Rev. St. § 3466 (Comp. St. § 6372).

3. **Statutes ⬿233—General language of statute does not apply to United States, where it would be deprived of existing rights.**

   The rule that the United States as a sovereign is not bound by the general language of a statute unless named therein ordinarily applies where the statute tends to restrain or diminish existing powers, rights, or interests of the sovereign.

4. **Bankruptcy ⬿123—United States, as preferred creditor, not entitled to vote for trustee.**

   Bankruptcy Act, § 56b (Comp. St. § 9640), providing that "creditors holding claims which are secured or have priority shall not, in respect to such claims, be entitled to vote at creditors' meetings," merely limits a right given solely by the statute, and does not deprive a creditor of any right, and under such provision the United States, as a creditor having priority, *held* not entitled to vote at a meeting for appointment of trustee.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the Tidewater Coal Exchange, bankrupt. As to an order of the District Court dismissing the petition of James C. Davis, Director General of Railroads, to review an order of the referee approving appointment of William R. Coyle, as trustee, said petitioner appeals and petitions to revise. Affirmed.

See, also, 274 Fed. 1008, 1011; 280 Fed. 638.

Harry M. Daugherty, Atty. Gen., and William A. Riter, Asst. Atty. Gen. (William Hayward, U. S. Dist. Atty., of New York City, John F. Finerty, of St. Paul, Minn., and Evan Shelby and Claude A. Thompson, both of New York City, of counsel), for appellant.

James F. Curtis and Root, Clark, Buckner & Howland, all of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This cause comes here on petition to revise an order entered in the District Court on November 17, 1921, dismissing the petition of the Director General to review the order of the

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

referee approving the appointment of William R. Coyle as trustee of the bankrupt and refusing to set aside the order approving Mr. Coyle's appointment.

The order adjudicating the Exchange a bankrupt having been entered on July 27, 1921, the matter was referred to the referee in bankruptcy, who called a meeting of creditors on August 25, 1921. At that meeting of the creditors the Director General of Railroads attempted to vote for one Frank C. Wright as trustee, on the ground that as Director General of Railroads he represented the United States and had filed a proof of debt in favor of the United States in the sum of $971,-611.70, and represented a debt (other than taxes) due the United States, through the Director General of Railroads, arising out of the operation of various railroads of the United States during the period of federal control.

Two other creditors, who had filed proofs of debt in an amount aggregating $10,746.76, voted for Wright as trustee. But 29 other creditors, who had filed proofs of debt in an amount aggregating $927,-452.20, but who had not deducted $139,866.84 shown on the books of the Exchange and on the bankrupt's schedules as due from them, voted for William R. Coyle. Thereupon the referee, over the objection of the Director General, approved of the appointment of Coyle as trustee by an order dated August 25, 1921. Thereafter, on September 22, 1921, the Director General, proceeding in accordance with the provisions of the Bankruptcy Act (Comp. St. §§ 9585–9656) and General Order No. XXVII (89 Fed. xi, 32 C. C. A. xxvii), filed a petition to review the order of the referee approving the appointment of Coyle.

The referee, however, refused to permit the United States, through the Director General, to vote, basing his refusal on the ground that the United States, through the Director General, was a creditor holding a claim which had priority, and as such was not entitled to vote by virtue of the provisions of section 56b of the Bankruptcy Act (Comp. St. § 9640), which reads as follows:

"Creditors holding claims which are secured or have priority shall not, in respect to such claims, be entitled to vote at creditors' meetings."

The District Judge after a hearing dismissed the petition, and entered an order to that effect on November 17, 1921. And this is alleged to be error.

That the Director General represented the United States in matters growing out of and connected with the operation of the railroads during the period of federal control was decided by this court in Globe & Rutgers Fire Insurance Co. v. Hines, 273 Fed. 774. He was during the period involved a part of the government of the United States, and as such entitled to the rights, privileges, and immunities inherent in the sovereignty. Missouri Pacific Railroad Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087, decided by the Supreme Court June 1, 1921. Moreover, at the argument it was conceded by all parties concerned in the present litigation that the Director General represents the United States respecting the matters herein involved, and may assert whatever rights and privileges the United States is entitled to exercise respecting the debt due from the Exchange to it.

[1] The United States, in operating the railroads during the period of federal control, was engaged in the performance of a governmental function, and was not carrying on a merely private commercial enterprise. See In re Western Implement Co. (D. C.) 166 Fed. 576. The Director General, in claiming on behalf of the United States the moneys arising out of the operation of the railroads, is seeking to recover public money, and he is acting in a governmental capacity, as much so as though the money to be recovered were taxes. See Chesapeake & Delaware Canal Co. v. United States, 250 U. S. 123, 126, 127, 39 Sup. Ct. 407, 63 L. Ed. 889.

[2] The Circuit Court of Appeals for the Seventh Circuit, in In re E. H. Hibner Oil Co., 264 Fed. 667, 14 A. L. R. 629, declared that unpaid freight charges for shipments by railroad during the period of federal control are the property of the United States, and the claim therefor is entitled to priority in bankruptcy under section 64b of the Bankruptcy Act (Comp. St. § 9648) and section 3466 of the Revised Statutes (Comp. St. § 6372). The Bankruptcy Acts of 1800 (Act April 4, 1800, c. 19, § 62 [2 Stat. 36]), of 1841 (Act Aug. 19, 1841 c. 9, § 5 [5 Stat. 444]), and of 1867 (Act March 2, 1867, c. 176, § 28 [14 Stat. 530]) expressly recognized the priority of debts due the United States, thus preserving in all its essential features the provision in the act of 1797, reproduced in section 3466 of the Revised Statutes, relating to priorities. The Bankruptcy Act of 1898 contains no similar express provision; and if, under that act, priority is given, it must be because of clause 5, subd. (b), § 64 (Comp. St. § 9648), which reads as follows:

"(5) Debts owing to any person who by the laws of the states or the United States is entitled to priority."

We have no doubt that the United States it to be regarded as a person within the meaning of the clause cited, and can assert its priority as given to it under section 3466 of the Revised Statutes (Comp. St. § 6372), which is reproduced in the margin.[1] The priority secured to the United States is priority over all creditors. The statutory provision referred to is simply declaratory of the common-law rule which entitles a sovereign to priority over other creditors of an insolvent. United States v. National Surety Co., 254 U. S. 73, 75, 41 Sup. Ct. 29, 65 L. Ed. 143.

[3, 4] It is necessary to determine whether the language of section 56b above cited, and which declares that creditors holding claims which have priority shall not be entitled to vote at creditors' meetings applies to the United States; the government not being expressly mentioned in the section. In the interpretation of statutes the principle is old and

---

[1] Sec. 3466. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.

well established that the crown is not bound by a statute unless named in it. It seems to rest upon the theory that the law is prima facie presumed to be made for subjects only. Willion v. Berkley, Plowd. 236. In Maxwell on the Interpretation of Statutes (5th Ed.) 220, that writer declares that the crown is not reached, except by express words or by necessary implication, in any case where it would be ousted of an existing prerogative or interest. "Where," he says, "the language of the statute in general, and in its wide and natural sense would divest or take away any prerogative or right from the crown, it is construed so as to exclude that effect. When the king has any prerogative estate, right, title, or interest, he shall not be barred of them by the general words of an Act of Parliament." See Bacon's Abr. "Prerogative" (E) 5 (c); Co. Litt. 43b; Chit. Prerogative, 382; Ascough's Case, Cro. Cas. 526; Magdalen College Case, 11 Rep. 74b.

In another way it is expressed by saying that in the construction of general words or dubious provisions there is a presumption against any intention to surrender public rights, or to affect the government. Lewis' Sutherland, Statutory Construction (2d Ed.) vol. 2, p. 931; Attorney General v. Donaldson, 10 M. & W. 117; Huggins v. Bambridge, Willes, 241; Stoughton v. Baker, 4 Mass. 522, 3 Am. Dec. 236; State v. Kinne, 41 N. H. 238.

Mr. Justice Story, in 1827, in United States v. Greene, 4 Mason, 427, 26 Fed. Cas. 33, No. 15,258, had before him the right of the United States to sue in the federal courts on a note as the indorsee, the maker and payee being citizens of the same state. The question arose under the Judiciary Act of 1789, c. 20, 1 Stat. 78. Section 11 of that act provided that no civil suit should be brought in either a District or Circuit Court to recover on a promissory note or other chose in action in favor of an assignee, unless such suit might have been prosecuted in such court if no assignment had been made, except in cases of foreign bills of exchange. If that provision applied to the United States, the suit could not be brought. It was held that the language of section 11 could not be construed as applicable to the United States as the government was not expressly named; and section 9 of the Act gave the District Courts jurisdiction of all suits at common law where the United States sues and the matter in controversy amounted, exclusive of costs, to the sum or value of $100.

In United States v. Hoar, 2 Mason, 311, 26 Fed. Cas. 329, No. 15,-373, Mr. Justice Story, in 1821, declared that, where the government is not expressly or by necessary implication included, it ought to be clear, from the nature of the mischiefs to be redressed or the language used, that the government itself was in contemplation of the Legislature, before a court of law would be authorized to put such an interpretation upon any statute. He added:

"In general, acts of the Legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary, force to the government itself."

And see United States v. Hewes, Crabbe, 307, 26 Fed. Cas. 297, No. 15,359.

In Dollar Savings Bank v. United States, 19 Wall. 227, 239, 22 L. Ed. 80, Mr. Justice Strong, speaking for the court, said:

"It is a familiar principle that the king is not bound by any act of Parliament, unless he be named therein by special and particular words. The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests.[2] He may even take the benefit of any particular act, though not named.[3] The rule thus settled respecting the British crown is equally applicable to this government, and it has been applied frequently in the different states, and practically in the federal courts. It may be considered as settled that so much of the royal prerogatives as belonged to the king in his capacity of parens patriæ, or universal trustee, enters as much into our political status as it does into the principle of the British Constitution.[4]"

In United States v. Herron, 20 Wall. 251, 255, 22 L. Ed. 275, that court, again referring to the subject, said, speaking through Mr. Justice Clifford:

"Acts of Parliament, says Chitty, which would divest or abridge the king of his prerogatives, his interest, or his remedies in the slightest degree, do not in general extend to or bind the king, unless there be express words to that effect. Therefore, says the same learned author, the statutes of limitation, bankruptcy, insolvency, set-off, etc., are irrelevant in the case of the king, nor does the statute of frauds relate to him, which last proposition is doubted by high authority. Exceptions exist to that rule undoubtedly, as where the statute is passed for the general advancement of learning, morality, and justice, or to prevent fraud, injury, and wrong, or where an act of Parliament gives a new estate or right to the king, as in that case it will bind him as to the manner of enjoying or using the estate or right as well as the subject."

And in a subsequent portion of the opinion, again recurring to the subject (20 Wall. 262, 22 L. Ed. 275), Mr. Justice Clifford said:

"Greater unanimity of decision in the courts or of views among text-writers can hardly be found upon any important question than exists in respect to this question in the parent country, nor is there any diversity of sentiment in our courts, federal or state, nor among the text-writers of this country."

In Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U. S. 152, 155, 32 Sup. Ct. 457, 56 L. Ed. 706, the rule is again stated, the foregoing cases are cited, and it is declared that "the proposition is established."

In applying the principle above discussed to the interpretation of section 56b, Bankruptcy Act (Comp. St. § 9640), it is to be observed that the right of the creditor to vote for the trustee is not a right which was possessed prior to and independent of the enactment of the statute involved. The right to vote at the creditors' meeting is a right created solely by the statute, and it exists only within the limits fixed by the statute. In providing that secured or priority creditors shall

[2] Magdalen College Case, 11 Reports, 74; King v. Allen, 15 East, 333.

[3] 7 Reports, 32; Potter's Dwarris on Statutes, 151, 152.

[4] Commonwealth v. Baldwin, 1 Watts (Pa.) 54, 26 Am. Dec. 33; People v. Rossiter, 4 Cow. (N. Y.) 143; United States v. Davis, 3 McLean, 483, Fed. Cas. No. 14,929; Same v. Williams, 5 McLean, 133, Fed. Cas. No. 16,721; Commonwealth v. Johnson, 6 Pa. 136; United States v. Greene, 4 Mason, 427, Fed. Cas. No. 15,258; Same v. Hoar, 2 Mason, 311, Fed. Cas. No. 15,373; Same v. Hewes, Crabbe, 307, Fed. Cas. No. 15,359.

not be entitled to vote at creditors' meetings, no creditor is deprived of any right with which he had been previously invested. To hold, as the court below did, that the United States, because it was a priority creditor, could not vote, did not deprive the United States of any existing prerogative or interest which it ever possessed. The rule that the United States as a sovereign is not bound by the general language of a statute, unless named therein, ordinarily applies where a statute tends to restrain or diminish existing powers, rights, or interests of the sovereign.

The rule which the Director General invokes is inapplicable to the facts of this case. To make it applicable it would be necessary, first, to show that the United States as a priority creditor possesses a right to vote, of which right it has been deprived by a statute which cannot be applied to the government, because it is not named. There is no right in any creditor to vote, except as that right is conferred by section 56, and that section expressly withholds the right from all priority or secured creditors, and gives it simply to all other creditors whose claims have been allowed and who are present. The claim of the Director General had not been allowed. For the reasons above stated we are compelled to hold that no error was committed in denying the right of the United States to vote for the trustee.

We may, in conclusion, point out that this court in the Matter of Anderson, 279 Fed. 525, decided at this term, while recognizing the general rule announced in Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513, held the United States bound by the terms of the Bankruptcy Act of 1898.

The order of November 17, 1921, dismissing the petition of James C. Davis, Director General of Railroads, is affirmed.