## Case No. 15,258.

### UNITED STATES v. GREENE et al.

[4 Mason, 427.] 1

Circuit Court, D. Maine. Oct. Term, 1827.

FEDERAL JURISDICTION—CITIZENSHIP—UNITED STATES.

The United States may sue in the district court as indorsees of a promissory note against the maker thereof, although the maker and payee were citizens of the same state. the restriction contained in the 11th section of the judiciary act of 1789, c. 20 [1 Stat. 78], not being intended to apply to suits brought by the United States. or if so intended. being repealed by the act of 1815, c. 255 [2 Story's Laws. 1530; 3 Stat. 244].

[Cited in Towne v. Smith. Case No. 14.115; U. S. v. Hewes. Id. 15,359; U. S. v. Tetlow, Id. 16,456; Dollar Sav. Bank v. U. S., 19 Wall. (86 U. S.) 239.]

[Cited in Farrar v. Gilman, 19 Me. 441.]

[In error to the district court of the United States for the district of Maine.]

The action was brought by the United States as indorsees of a promissory note made by the defendants [Elijah D. Greene and others] at Eastport on the 10th of February, 1826, whereby for value received they promised to pay the president, directors, and company of the Bank of Passamaquoddy or order, three months after date, the sum of twenty-three hundred and thirty-three dollars and thirty-three cents; and afterwards the bank, by its cashier. indorsed the same to the United States. There was also a count for money had and received. The defendants pleaded

to the jurisdiction, averring that the bank of Passamaquoddy is established in, and composed of. citizens of the state of Maine, and that the defendants at the commencement of the action were and still are citizens of the same state, and that by the 11th section of the judiciary act of 1789, c. 20, the district court has no cognizance of such a suit brought by the United States as assignees. There was a demurrer to this plea, and upon argument, the district court decided against its jurisdiction, and dismissed the suit. [Case unreported.] From this judgment the present writ of error was brought to the circuit court.

The cause was argued at the last term by Hobbs & Longfellow, for defendants, and by Mr. Shepley, Dist. Atty., and Mr. Daveis, for the United States.

The cause was then continued for advisement. and at the present term, the opinion of the court was delivered as follows:

STORY, Circuit Justice. It is quite unnecessary in the present case to consider. whether the plea to the jurisdiction be drawn with perfect technical accuracy or not, as it is well settled, that sufficient matter must appear upon the record to support the jurisdiction of the court, otherwise the suit must be dismissed.

The question then is, whether, upon the matter apparent on the record, the district court possessed jurisdiction of the suit; and this question must be decided exclusively by the true construction of the acts of congress conferring and limiting the jurisdiction of the national courts. The 9th section of the judiciary act of 1789 (chapter 20) declares, that the district courts shall have cognizance "of all suits at common law, where the United States sue, and the matter in dispute amounts, exclusive of costs, to the sum or value of one hundred dollars." The present case falls completely within this description; it is a suit by the United States at common law, and the matter in dispute exceeds 100 dollars. There would be an end of all controversy. therefore, if the legislative provisions stopped here. The other parts of this section confer all the other jurisdiction belonging to the district courts generally; and (the observation is material) it gives no right to any individual to sue in those courts, with the single exception of causes. "where an alien sues for a tort only, in violation of the law of nations, or a treaty of the United States." The 10th section of the act. however, gives to the district courts of Kentucky and Maine additional jurisdiction of all other causes. except of appeals and writs of error, which are made cognizable in the circuit courts. It may be remarked, in passing, that this section has now become inoperative by the establishment of distinct circuit courts in each of these states. Then comes the 11th section, upon which alone the difficulty arises. It provides, that the circuit courts shall have original cognizance "of all suits

1 [Reported by William P. Mason. Esq.]
26 FED. CAS.—3

at common law or in equity, where the matter in. dispute. exceeds. exclusive of costs, the sum or value of five hundred dollars, and the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of the state, where the suit is brought, and a citizen of another state." And afterwards comes the following clause: "And no civil suit shall be brought before either of said courts against an inhabitant of the United States by any original process in any other district than that, whereof he is an inhabitant, or in which he shall be found at the time of serving the writ; nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note, or other chose in action in favor of an assignee, unless such suit might have been prosecuted in such court to recover the contents, if no assignment had been made, except in cases of foreign bills of exchange." The terms of this latter clause are exceedingly broad and strong, "nor shall any district or circuit court have cognizance," &c.; and, if they are to be understood without any limitation whatsoever, they clearly extend to the present case. Yet there are considerations, which might induce one to pause and to inquire, whether such could have been the legislative intention. Whether congress could have intended to exclude the United States from suing in their own courts in cases in which the government became legally possessed, by assignment, of notes or other choses in action, whatever might be the sum in controversy. The arguments urged at the bar on this subject are not without great weight. In the first place. this limitation is found in a section, whose main object is to fix the jurisdiction of the circuit courts. It deals, indeed, with process in the district courts also, but not so much to ascertain their jurisdiction, as to prescribe when and where process shall be served and be returnable. In the next place, the clause respecting assignments of notes and choses in action manifestly proceeds upon the supposition, that but for such restriction, suits might be brought by private indorsees, or assignees, in the courts, to which it refers. The language is not such as would naturally be used, if suits by the government in the district courts generally had been in contemplation. The restriction would then pertinently and properly have found its place, not in the 11th. but in the 9th section of the act. Now, no private indorsees or assignees can sue in any cases in any district courts, excepting such as exercise circuit powers, for no private persons but aliens can sue at all therein, and they in certain classes of torts only. The legislature cannot be presumed to make, in the same act. a universal restriction to be applied to all the district courts, when, from the nature of its own prior provisions, it cannot, even potentially, be applied to more than two, viz. Kentucky and Maine. The fair construction of the terms, under such circumstances, is to restrain their generality; to

look to the primary and leading intention of the provisions, and to restrict the words to obvious cases. Effect may thus be given to the whole language, without breaking in upon a very important national policy. In this view of the subject, the words, "any district or circuit court," include only such courts as private indorsees or assignees might generally and ordinarily sue in, but for the restriction, that is to say, circuit courts properly so called, and district courts exercising the jurisdiction of circuit courts. The clause would thus correctly apply to the district courts named in the 10th section, and exclude those in the 9th section.

The argument thus pressed upon the court is fortified by various considerations of a different nature. It is a general rule in the interpretation of legislative acts not to construe them to embrace the sovereign power or government, unless expressly named or included by necessary implication.[2] Here the jurisdiction is clearly given by the words of the 9th section, and it is incumbent upon those who assert that it is restrained by another section, to establish the fact beyond all doubt. To show that the subsequent words may be so applied, is not sufficient; it must be shown, that they were actually used for such a purpose. Now the case of the government is neither within the policy nor the mischiefs contemplated by the clause. It was foreseen, that if no restriction of this nature were interposed, the jurisdiction of the courts of the United States might, by fraudulent or friendly assignments, be extended to almost all classes of contracts between citizens of the same state. This would be a manifest evasion of the constitution in its limits upon the judicial power. This was the mischief to be remedied. But the case of the government is not within the mischief. It is not presumable, that the government would countenance a fraud of this nature. It could have no interest, and no means to accomplish it. It could have no temptation to withdraw private suits from their proper forum; and it could not be betrayed into such a course by any of its agents without immediate detection. On the other hand, the constitution meant to preserve to the government itself the right to sue in its own courts in all cases, and thus secure the power of enforcing its own just demands. The act of 1789 (chapter 20) may be presumed to have intended to confer this jurisdiction in all cases except of a very small nature. In the ordinary course of its operations. the government must become possessed of various pecuniary interests by assignment, of notes and bills and other choses in action, not merely by purchase, but, as in the case before the court, by assignment from its own insolvent debtors, who

[2] See Com. Dig "Parliament," R, 8, 16; Co. Litt. 90b; 1 Bl. Comm. 261; Inhabitants of Town of Stoughton v. Baker. 4 Mass. 522, 528; U. S. v. Hoar [Case No. 15,373]; Bac. Abr. "Prerog." E. 5: Ball. Lim. p. 18. c. 2.

might be incapable of giving any other security for their debts to the public. Some of such assignable securities, or rights of property, might be wholly of an equitable nature. And it could scarcely escape the notice of congress, that in several states in the Union no state courts of equity existed at that period, or were likely to be created. So that in the case of some assigned equitable interests, upon the rigid construction of the act of 1789 now contended for, the government would be wholly without remedy in any court whatsoever. And even in respect to assignments of choses in action of a legal nature, the remedy would often be imperfect, dependent upon local jurisprudence, and in many instances wholly inadequate for the public exigencies. The importance, nay the vital necessity of a prompt and efficient means of collecting the public debts and revenues, could not be overlooked by the national legislature; and no just jealousy could arise from its choice of its own tribunals to preserve the public faith, and sustain the public interests. The argument, indeed, in this aspect, goes to the extent of creating an implied exception of assignments to the government, not only in the district, but in the circuit courts. Its just force is not, however, diminished by this consideration.

There is another suggestion, which is not without influence in the interpretation of the restrictive clause. It manifestly was intended to apply to assignments, which are cognizable in equity, as well as at law. Now the district courts generally have no jurisdiction over equity causes. Suits of this nature can be brought only in the circuit courts, or in district courts exercising the same powers. The restrictive clause, then, while it furnishes an appropriate limitation to equity suits in the latter courts, can have no possible operation on the former, for no such suits can be brought therein. It is true, that effect may be given to the whole clause as to all courts, reddendo singula singulis, by applying it pro tanto to the jurisdiction of each respectively. But the question will still remain, whether this be the natural or just construction. If upon the common rule of construing statutes the government is not deemed to be included within general words, what reason is there for setting aside that rule in the present case? Does not every reason of sound policy point the other way? In cases of the statute of limitations, however broad the terms of the statute, the government is never held bound, unless expressly named. Yet the policy of such an exemption is not more apparent than it is in the present case. The train of reasoning, urged at the bar with such an impressive effect, and of which the foregoing is but an imperfect outline, would, upon the language of the act of 1789, alone suspend my mind in no inconsiderable doubts. I have never been able to persuade myself that congress could, in the clause under consideration, have had the case of the government in contemplation. Neither the mischief to be provided against, nor the public policy to be promoted, seems to embrace such a case. If ever there was a case, in which the general words of a statute would justify a court in interposing a limitation of meaning upon them, I can scarcely imagine one stronger than the present. Yet the words are so direct and positive, that I am not sure that I should have been brought to sustain the jurisdiction, if the act of the 3d of March, 1815, c. 253 [2 Story's Laws, 1530; 3 Stat. 244], had not relieved my doubts. That act (section 4) provides, "that the district courts of the United States shall have cognizance, concurrent with the courts and magistrates of the several states, and the circuit courts of the United States, of all suits at common law, where the United States, or any officer thereof, under the authority of any act of congress, shall sue, although the debt, claim, or other matter in dispute shall not amount to one hundred dollars." The interpretation of this section has been settled by the supreme court, in Post Master General v. Early, 12 Wheat. [25 U. S.] 136, a case of no inconsiderable difficulty. It was decided that it conferred general jurisdiction, unlimited by amount, upon the district courts, and by consequence upon the circuit courts, of all suits at common law, where the United States, or any officer thereof under any act of congress, shall sue. Supposing, therefore, the restriction of the 11th section of the act of 1789 to apply to suits of the government in whatever courts instituted, this restriction, not being incorporated into the act of 1815, leaves its general words in full force. The latter silently operates a repeal of all antecedent limitations, which it does not recognise and continue, upon the known principle, that the general authority given by a subsequent statute must be presumed to have intentionally superseded every prior statute inconsistent with its provisions.

Upon this view of the matter I am of opinion, that the jurisdiction of the district court is well founded upon the first count, founded on the negotiable note. But there happens to be another count in the declaration for $3000, money had and received, against which no objection to the jurisdiction can be urged, since it does not purport to be founded upon any assignment, and the court cannot presume it. It is, however, proper to state, that the existence of this court was never brought to the notice of the district court, and was first suggested upon the argument here. The dismissal of the suit would, for this cause alone, be unmaintainable; but as the other was the real ground of controversy, I have felt it my duty to examine and decide it. Judgment reversed.