## Case No. 3,062.

### COMMERCIAL NAT. BANK v. SIM-MONS et al.

[1 Flip. 449; 20 Int. Rev. Rec. 32, 79; 22 Int. Rev. Rec. 66; 2 N. Y. Wkly. Dig. 97; 8 Chi. Leg. News. 164; 10 Alb. Law J. 155; 1 Thomp. Nat. Bank Cas. 294; 6 Chi. Leg. News. 344; 3 Am. Law Rec. 107; 31 Leg. Int. 269; 22 Pittsb. Leg. J. 23; 1 Cin. Law Bul. 29.] [1]

Circuit Court, N. D. Ohio. Jan. Term, 1876.

NATIONAL BANKS—RIGHT TO SUE IN FEDERAL COURTS.

A national bank does not sue by virtue of any right conferred by the judiciary act, [1 Stat. 78], but because of the right conferred by the act of 1864 [13 Stat. 101], which authorized and created it, and which is its charter. The charter of the old Bank of the United States was but a law of the United States as the general banking act is. Nor does the judiciary act control the power and right of these banks to sue in the federal courts. The limitations in the 11th section of that act as to suits on assigned paper do not apply to them.

[Suit by the Commercial National Bank of Cleveland, Ohio, against John G. Simmons and others.]

W. J. Boardman, for plaintiff.
Estep & Burke, for defendants.

WELKER, District Judge. This suit is brought on two promissory notes payable to the order of J. G. Simmons & Co., and indorsed to the plaintiff.

The petition states that the plaintiff is a corporation existing under the laws of the United States, and does not state that the payee of the notes is not a citizen of Ohio.

The defendants, Thompson and Mills, demur to the petition, and assign three grounds of demurrer. 1st—That it appears on the face of the petition in each of said causes of action, that the court has no jurisdiction

of the defendants, or either of them, or of the subject of the action. 2d—That the plaintiff and its assignor are both residents of the state of Ohio, and of said district, and have no legal right to bring suit against the defendants in this court. 3d—For other good and sufficient reasons appearing on the face of the petition.

This demurrer raises two questions: 1st—Whether the plaintiff can sue in this court, being located in the state of Ohio, and in this district? 2d—Whether, under the judiciary act of 1789 [supra], and the limitation of the 11th section thereof, the plaintiff can sue in this court upon the promissory notes in petition described, the assignor thereof to the plaintiff being a citizen of the state of Ohio, and of this district.

In order to dispose of the questions made, it will be necessary to examine the provision of the act of congress "to provide a national currency, etc.," approved June 3, 1864 [supra], under which the plaintiff was organized, and also the act on the same subject, approved in 1863.

The 59th section of the act of 25th February, 1863 [12 Stat. 681], provides that "all suits, actions and proceedings by or against any association under the act, may be had in any circuit, district or territorial court of the United States held within the district where such association was established."

The 57th section of the act of 1864 provides: "That suits, actions and proceedings against any association under this act, may be had in any circuit, district or territorial court of the United States held within the district in which such associations may be established, or in any state, or municipal court in the county or city in which such association is located having jurisdiction in similar cases."

It is claimed by the defendants that under this section as amended, suit can not be brought by national banks in the state in which they are established. That it only applies to suits against such associations. That, it is true, would seem to be the provision of the section.

But the supreme court of the United States in the case of Kennedy v. Gibson, 8 Wall. [75 U. S.] 498, have given a construction of these two sections that is binding upon this court. Justice Swayne, delivering the opinion of the court, says:

"The 59th section of the act of February 25th, 1863, provides that all suits by or against such associations, may be brought in the proper courts of the United States, or of the state. The 57th section of the act of 1864 relates to the same subject, and revises and enlarges the provisions of the 59th section of the preceding act. In the latter, the word by, in respect to such suits, is dropped. The omission was doubtless accidental. It is not to be supposed that congress intended to exclude the associations from suing in the courts where they can be

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 2 N. Y. Wkly. Dig. 97, contains only a partial report.]

sued. The difference in language in the two sections is not such as to warrant the conclusion that it was intended to change the rule prescribed by the act of 1863. Such suits may still be brought by the associations in the courts of the United States. If this be not the proper construction, while there is provision for suits against the associations, there is none for suits by them in any court."

Again, in [Merchants' Bank v. State Bank] 10 Wall. [77 U. S.] 605, the National Bank of Boston sued a state bank of the same state in the circuit court of Massachusetts, and the action was maintained. This case recognizes the construction given to these sections by Justice Swayne by entertaining jurisdiction in that case.

We may then regard the section as reading by or against, and authorizing suit by or against these associations.

It is claimed also by defendants that the 57th section only provides for suits under or authorized by the act, that is for liabilities under the act. This is not tenable. The words "under this act" refer to and apply to associations under the act, as descriptive of the parties authorized to sue or be sued, and not to liabilities or causes of action.

We now come to the second question made, and a very important one, and about which there well may be difference of opinion. I have examined it with much care, in order to arrive at a correct conclusion, and feel well satisfied at the conclusions to which I have arrived.

Suppose the plaintiff has the right to sue generally in this court as we have determined, has it the right to sue on promissory notes assigned to it by a resident of the district? I can find no adjudicated case under the banking law, settling this question.

The 11th section of the judiciary act of 1789, after stating that circuit courts shall have jurisdiction in civil cases, etc., in all cases where the suit is between a citizen of the state where "the suit is brought, and a citizen of another state," provides "nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange."

I find two cases in 9 Wheat. [22 U. S.] decided by the supreme court under a similar question made, which arose under the charter of the old United States Bank.

In the first case (Osborn v. U. S. Bank, 9 Wheat. [22 U. S.] 740) it is decided that the charter of the bank confers on the bank the right to sue in any circuit court of the United States. In delivering the opinion in this case, Chief Justice Marshall says:

"The charter of incorporation not only creates it, but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is the law of the United States. This being can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States."

Another case was decided at the same term of the supreme court. U. S. Bank v. Planters' Bank of Georgia, 9 Wheat. [22 U. S.] 905. The suit was originally brought by the United States Bank against defendant in the circuit court for the district of Georgia upon notes payable to a citizen of Georgia, and indorsed and transferred to the bank. The defense set up was that the court had no jurisdiction under the 11th section of the judiciary act, or, rather, the limitation to it.

In delivering the opinion of the court, Chief Justice Marshall says:

"We proceed next to inquire whether the jurisdiction of the court is ousted by the circumstance that the notes on which the suit was instituted were made payable to citizens of the state of Georgia. The words of the judiciary act, § 11, are:" (He then quotes the part of the act above quoted, being the limitation, and says:) "This is a limitation on the jurisdiction conferred by the judiciary act. It was apprehended that bonds and notes given in the usual course of business by citizens of the same state to each other, might be assigned to citizens of another state, and thus render the maker liable to a suit in the federal courts. To remove this inconvenience, the act which gives jurisdiction to the courts of the Union over suits brought by the citizen of one state against the citizen of another, restrains that jurisdiction where the suit is brought by an assignee to cases where the suit might have been sustained, had no assignment been made. But the bank does not sue in virtue of any right conferred by the judiciary act, but in virtue of the right conferred by its charter. It does not sue because the defendant is a citizen of a different state from any of its members, but because its charter confers upon it the right of suing its debtors in a circuit court of the United States. * * * There is, consequently, scarcely a debt due to the bank for which a suit could be maintained in the federal court, did the jurisdiction of the court depend on citizenship. A general power to sue in any circuit court of the United States, expressed in terms obviously intended to comprehend every case, would thus be construed to comprehend no case. Such a construction cannot be the correct one. We think, then, that the charter gives to the bank a right to sue in the circuit courts of the United States, without regard to citizenship."

Now let us examine the banking law itself under which the plaintiff was organized.

Section 8, of the act of 1864, provides: "That every association formed pursuant to the provisions of this act, shall, from the date of the execution of its organization certificate, be a body corporate. * * * By such name it may make contracts, sue and be sued, complain and defend in any court of law and equity as fully as natural persons, * * * and exercise under this act all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidence of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security," etc.

Then follows, in the same act, section 57, already quoted, providing "that suits, actions, and proceedings, by or against any association under this act, may be had in any circuit, district, or territorial court of the United States within the district in which such association may be established."

To ascertain the privileges and powers conferred upon the banking associations, these sections are to be taken and construed together. It seems to me that these privileges and powers thus given in this act, are as broad and comprehensive as those given to the United States Bank by its charter, and referred to in the case of 9 Wheat. [22 U. S.].

It must be borne in mind that in the judiciary act the right to sue or be sued mainly depends upon citizenship of the parties. That corporations are only allowed to sue or be sued in the federal courts, under the act, through the legal fiction of citizenship, arising from the presumption that such corporations are citizens of the states under whose laws they are created.

These banking associations, not being created by state laws, have no state citizenship growing out of the presumed residence of the stockholders. Under the judiciary act, then, they have no power to sue in federal courts, and must, therefore, derive it from the act creating them. Having no right to sue under that act, the limitation in the 11th section as to suits upon indorsed notes and choses in action does not apply; the right to sue under that section, and the limitation thereto, go together, the one controlling the other.

If the matter of citizenship, in reference to the national banks, is dispensed with in favor of such banks, then what reason is there for the application of the limitation, as to suits on assigned paper? That limitation is only attached to enforce the privileges of citizenship and to prevent its abuse in bringing suits in federal courts. And, further, the banks, in purchasing notes, etc., only are doing what the law authorizes them to do.

I may, then, well say, as was said in the case in Wheaton, that the bank does not sue in virtue of any right conferred by the judiciary act, but in virtue of the right conferred

upon it by the act of 1864, authorizing and creating it, and which constitutes its charter. The charter of the old United States Bank was but a law, as this general act is a law of the United States.

The judiciary act does not control the right and power of these banks to sue in the federal courts.

The demurrer to the petition is overruled.