### FEDERAL RESERVE BANK OF DALLAS v. WEBSTER.

(District Court, N. D. Texas, at Dallas. June 14, 1922.)

No. 3150.

1. **Courts ⟨⟩284—Assignee clause inapplicable to case arising under law of the United States.**
    The "assignee clause" (Judicial Code, § 24 [Comp. St. § 991]), is inapplicable to case arising under a law of the United States.

2. **Courts ⟨⟩294—Suit by Federal Reserve Bank held "suit arising under law of the United States."**
    Suit by Federal Reserve Bank *held* one "arising under a law of the United States."

3. **Statutes ⟨⟩228—Office of "proviso" stated.**
    The office of a "proviso" is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it as extending to cases not intended by the Legislature to be brought within its purview.

4. **Statutes ⟨⟩228—Proviso strictly construed.**
    Where the enacting clause is general in its language and object, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fairly fall within its terms.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Statutes ⟨key⟩231—Revision not presumed to change the law.**

　　In construing the Revised Statutes, the presumption is against an intention to change the meaning and construction of a statute re-enacted therein, and changes and phraseology arising from a condensation are not to be regarded as changing the pre-existing law, nor is it to be inferred that Congress, by consolidating or transposing earlier provisions, intended to change their effect, unless an intention to do so is clearly expressed.

At Law. Action by the Federal Reserve Bank of Dallas against Don P. Webster. On plea to the jurisdiction. Jurisdiction sustained.

Etheridge, McCormick & Bromberg, Chas. C. Huff, and E. B. Stroud, Jr., all of Dallas, Tex., for plaintiff.

William H. Atwell, of Dallas, Tex., for defendant.

GRUBB, District Judge. This suit was instituted by the plaintiff to recover the contents of certain warrants exceeding the jurisdictional amount, issued by the defendant to the order of divers and sundry citizens of the state of Texas and by them assigned to the plaintiff.

[1] The defendant contends that this court is without jurisdiction of the suit. It bases that contention upon the existence of that part of the first paragraph of section 24 of the Judicial Code (Comp. St. § 991) which reads:

　"No District Court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made."

The contention of the plaintiff is that this suit arises under a law of the United States, and that the provision above quoted and hereinafter referred to as the "assignee clause," applies only to cases in which an alien sues a citizen, or in which a citizen of another state sues a citizen of the state in which the action is brought, and that it has no application to a case arising under a law of the United States.

[2] That this case is one arising under a law of the United States has been expressly decided in American Bank & Trust Co. v. Federal Reserve Bank of Atlanta, 256 U. S. 350, 41 Sup. Ct. 499, 65 L. Ed. 983. The plaintiff maintains that the legislative history and judicial construction of the "assignee clause" unmistakably show that it has no application to a case arising under a law of the United States, and that the "assignee clause," as it now appears in section 24 of the Judicial Code, does not change the operation of that clause as it existed in the act of 1888 (25 Stat. 433). The "assignee clause" was embodied in the original Judiciary Act of 1789, and has been brought forward in substance, in varying phraseology, through all subsequent enactments and revisions. The original Judiciary Act of 1789 (1 Stat. 73 et seq.) did not vest jurisdiction over cases arising under the Constitution or laws of the United States, but by section 11 thereof the jurisdiction was confined to three classes of cases: (1) Where the United States are plaintiffs; (2) where an alien is a party; (3) where

the suit is between a citizen of the state where the suit is brought and a citizen of another state. By the Act of February 13, 1801, c. 4, § 11 (2 Stat. 89), jurisdiction over suits arising under the Constitution and laws of the United States was vested; but by the Act of March 8, 1802 (2 Stat. 132), the Act of February 13, 1801, was repealed, and the original Judiciary Act revived, so that the jurisdiction over cases arising under the Constitution and laws of the United States was exercised for the first time by the Act of March 3, 1875, c. 137, § 1 (18 Stat. 470).

Reverting to the original Judiciary Act, it was held by Justice Story, at circuit, that the "assignee clause" was without application to a suit by the United States, as assignee to recover the contents of a promissory note against the maker, although the maker and the payees and assignors were citizens of the same state, because the restriction contained in the eleventh section of the act, being the "assignee clause," was not intended to apply to a suit brought by the United States. United States v. Greene, 26 Fed. Cas. 33, No. 15,258. Therefore it appears that the "assignee clause," as embodied in the original Judiciary Act, was confined in its operation to the remaining two classes of cases—the one in which an alien was a party, and the other in which jurisdiction rested solely on diverse citizenship.

The spirit and intent of the "assignee clause" and a consideration of the evil designed to be prevented thereby do not embrace this case within their purview. The first Bank of the United States was not by its charter vested with the power to sue in the federal court, and, as above stated, the Judiciary Act did not confer jurisdiction over cases arising under laws of the United States, and it was held in the case of Bank of the United States v. Deveaux, 5 Cranch, 61, 3 L. Ed. 38, and Bank of the United States v. Martin, 5 Pet. 479, 8 L. Ed. 198, that the bank could not maintain an action in the federal court. The decision in those cases would have been to the contrary, if the original Judiciary Act had conferred, as the Judicial Code now confers, jurisdiction over cases arising under the laws of the United States. Thereafter the second Bank of the United States was incorporated by act of Congress, and its charter clothed it with the power to sue in the federal court. It was held by Chief Justice Marshall, in Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204, that it was within the province of Congress, under the Constitution, to confer jurisdiction on the federal courts of a suit by the bank, as such a suit was one arising under a law of the United States within the meaning of those words in the Constitution, and that the bank could maintain an action in the federal court. The express provision in the charter of the bank authorizing it to sue in the federal court was but the equivalent of the existing statute, which confers jurisdiction in all suits of a civil nature at common law or in equity of cases arising under the laws of the United States, and if the original Judiciary Act had conferred that kind of jurisdiction, the special provision in the bank's charter authorizing it to sue in the federal court would have been wholly unnecessary.

In Commercial National Bank v. Simmons, 6 Fed. Cas. 226, No. 3,062, the bank brought an action to recover the contents of notes pay-

able to and assigned by citizens of the state where the suit was brought to the plaintiff, and it was contended there, as it is contended here, that the "assignee clause" defeated the jurisdiction, but the court held otherwise.

In Bank of the United States v. Planters' Bank of Georgia, 9 Wheat. 904, 6 L. Ed. 244, Chief Justice Marshall held that the bank, despite the "assignee clause," could maintain an action on notes assigned to it by citizens of the state of Georgia, where the action was brought. It clearly appears from the opinion in that case that the court construed the "assignee clause" to be confined in its application to cases in which the jurisdiction rested solely on diverse citizenship. In the course of the opinion Chief Justice Marshall, inquiring whether the "assignee clause" defeated the jurisdiction, says:

"It does not sue, because the defendant is a citizen of a different state from any of its members, but because its charter confers upon it the right of suing its debtors in a Circuit Court of the United States. If the bank could not sue a person who was a citizen of the same state with any one of its members, in the Circuit Court, this disability would defeat the power. There is, probably, not a commercial state in the Union, some of whose citizens are not members of the Bank of the United States. There is, consequently, scarcely a debt due to the bank, for which a suit could be maintained in a federal court, did the jurisdiction of the court depend on citizenship. A general power to sue in any Circuit Court of the United States, expressed in terms obviously intended to comprehend every case, would thus be construed to comprehend no case. Such construction cannot be the correct one."

In this case the plaintiff does not sue because the defendant is a citizen of another state, but because its charter in virtue of an Act of Congress, confers upon it the right of suing its debtors in the federal court under that provision of section 24 of the Judicial Code which vests jurisdiction in this court, not of some but of all cases arising under the laws of the United States. Hence it is clothed, by virtue of its charter and the jurisdictional provision above referred to, with the general power to sue in the courts of the United States, and that power is, as said by Chief Justice Marshall, "expressed in terms obviously intended to comprehend every case," and to construe it as contended for by the defendant in this case would make it "comprehend no case."

As this case arises under a law of the United States, the matter of citizenship is immaterial. In Commercial National Bank v. Simmons, supra, Welker, District Judge, said:

"If the matter of citizenship, in reference to the national banks, is dispensed with in favor of such banks, then what reason is there for the application of the limitation, as to suits on assigned paper? That limitation is only attached to enforce the privileges of citizenship and to prevent its abuse in bringing suits in federal courts. And, further, the banks, in purchasing notes, etc., only are doing what the law authorizes them to do."

This unmistakably shows that the restriction of the "assignee clause" applies only to the matter of citizenship, and that it was never designed to extend to a case arising under a law of the United States. The comment of Judge Welker that the banks, in purchasing notes, are doing only what the law authorizes them to do, is pertinent here. The

charter of the plaintiff authorizes it to deal in and to acquire such paper as that upon which this suit is based, and it is a matter of common knowledge that the assets of all the Federal Reserve Banks consist largely of notes and choses in action assigned to them by citizens of the states in which they are located. From this it follows that the construction contended for by the defendant in this case would deprive the Federal Reserve Banks of the right to sue the majority of their delinquent debtors in the federal court. Such a construction would be subversive of both the letter and the spirit of the law that explicitly confers jurisdiction of all cases arising under the laws of the United States.

The "assignee clause" does not operate to defeat jurisdiction unless the case comes both within its letter and intent. If it should be conceded that this case comes within the letter of the "assignee clause," yet it is equally obvious that it does not come within its intent. As said by Justice Story, in United States v. Greene, supra, in discussing the "assignee clause":

"The terms of this latter clause are exceedingly broad and strong, 'nor shall any District or Circuit Court have cognizance,' etc.; and, if they are to be understood without any limitation whatsoever, they clearly extend to the present case."

But said Justice Story:

"It was foreseen that, if no restriction of this nature were interposed, the jurisdiction of the courts of the United States might, by fraudulent or friendly assignments, be extended to almost all classes of contracts between citizens of the same state. This would be a manifest evasion of the Constitution in its limits upon the judicial power. This was the mischief to be remedied. But the case of the government is not within the mischief. It is not presumable that the government would countenance a fraud of this nature."

It cannot be presumed that the Federal Reserve Banks, which essentially are great governmental agencies, and in which the government itself has a direct pecuniary interest, would indulge the practice of obtaining choses in action by "fraudulent or friendly assignments" for the improper purpose of wrongfully conferring jurisdiction where it rightfully did not exist. The institution in this court of a suit arising under a law of the United States cannot constitute a mischief, because the institution and maintenance of such a suit is expressly permitted by the Constitution and existing law.

In New Orleans v. Whitney, Adm'r, 138 U. S. 595, 11 Sup. Ct. 428, 34 L. Ed. 1102, the court entertained jurisdiction of a suit on a chose in action by an administrator, saying:

"The evil which the law was intended to obviate was the voluntary creation of federal jurisdiction by simulated assignments. Assignments by operation of law, creating legal representatives, are not within the mischief or reason of the law."

In Lipschitz v. Napa Fruit Co., 223 Fed. 701, 139 C. C. A. 231, the Circuit Court of Appeals for the Second Circuit, in discussing the "assignee clause," said:

"The intent of the statute was to prevent citizens of the same state from creating a diversity of citizenship by assignment, and from thereby conferring

upon the assignee by indirection a right to sue in the courts of the United States which otherwise he would not have possessed."

In Holmes v. Goldsmith, 147 U. S. 160, 13 Sup. Ct. 288, 37 L. Ed. 118, the Supreme Court said:

"It is quite plain that the plaintiffs' action did not offend the spirit and purpose of this section of the act. The purpose of the restriction as to suits by assignees was to prevent the making of assignments of choses in action for the purpose of giving jurisdiction to the federal court."

In that case the jurisdiction, though resting solely on diverse citizenship, was sustained because it was shown that the nominal indorser was not really such, and that the note was made by the makers for his accommodation and as his sureties. Numerous other cases of similar import may be readily cited, but the foregoing excerpts show that this case is without the mischief of the inhibition of the "assignee clause."

There are two classes of federal jurisdiction. One is dependent upon the characters of the parties and the other upon the character of the subject-matter. These are two distinct conceptions. This case does not depend upon the character of the parties, but is governed by the subject-matter. In Cohens v. Virginia, 6 Wheat. 264, 393 (5 L. Ed. 257), Chief Justice Marshall said:

"In one description of cases, the jurisdiction of the court is founded entirely on the character of the parties, and the nature of the controversy is not contemplated by the Constitution. The character of the parties is everything, the nature of the case nothing. In the other description of cases the jurisdiction is founded entirely on the character of the case, and the parties are not contemplated by the Constitution. In these the nature of the case is everything; the character of the parties nothing."

The jurisdiction of this suit, therefore, is dependent upon its character. It is one arising under a law of the United States, and is in no way concerned with the character of the parties.

The contention of the defendant is further confronted with this objection: In pursuance of the Constitution, Congress has explicitly clothed this court with jurisdiction of all suits at common law or in equity that involve the requisite jurisdictional amount and that arise under the laws of the United States. This jurisdiction will not be held to be taken away by any subsequent words of the statute, although appropriate for the purpose, unless it shall clearly appear that such was the manifest intent of Congress.

The reasoning of Justice Story, in United States v. Greene, supra, while applying with peculiar force to the government, is also applicable here. In that opinion Justice Story said:

"Here the jurisdiction is clearly given by the words of the ninth section, and it is incumbent upon those who assert that it is restrained by another section, to establish the fact beyond all doubt. To show that the subsequent words may be so applied, is not sufficient; it must be shown that they were actually used for such a purpose."

The "assignee clause" was inserted in the original Judiciary Act, and that at a time when it was not possible for it to operate upon suits arising under the Constitution or the laws of the United States, because at that time such jurisdiction had not been conferred, nor, if

we eliminate the short existence of the Act of February 13, 1801, was it conferred until the Act of March 3, 1875. It is therefore indisputable that Congress in the original enactment of the "assignee clause" designed that it should operate only on suits in which the jurisdiction was founded either upon alienage or diverse citizenship. The "assignee clause" in the act of 1887 (24 Stat. 552), as corrected by the act of 1888 (25 Stat. 433), which is embodied in section 629 of the Revised Statutes, is set forth in a proviso following the grant of jurisdiction in cases in which an alien is a party or the suit is between a citizen of the state where it is brought and a citizen of another state. That act is as follows:

"The Circuit Courts shall have original jurisdiction as follows:

"First. Of all suits of a civil nature at common law or in equity, where the matter in dispute, exclusive of costs, exceeds the sum or value of five hundred dollars, and an alien is a party, or the suit is between a citizen of the state where it is brought and a citizen of another state: Provided, that no Circuit Court shall have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange."

The connection of the clause in question in the statute above quoted unmistakably shows that its operation was restricted to the two classes of cases before specified.

[3, 4] Again the "assignee clause" is embodied in the proviso, and the office of a proviso is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it as extending to cases not intended by the Legislature to be brought within its purview. Where the enacting clause is general in its language and object, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fairly fall within its terms. A proviso carves special exceptions only out of the enacting clause, and those who set up any such exception must establish it as being within the reason thereof. Such is the text of the article entitled "Statutes and Statutory Construction," in 1 Fed. Stat. Anno. (2d Ed.) p. 153, and the text is supported by many citations from the Supreme Court.

The fact that the "assignee clause" as it now appears in section 24 of the Judicial Code, is differently arranged and is set forth in a separate sentence, can exert no influence here, because the Judicial Code, both by its express provision and by settled judicial construction, is not a new enactment, but a mere continuation, and neither a mere change in arrangement nor an unimportant change of phraseology operates a change of the law.

Section 294 of the Judicial Code (Comp. St. § 1271) reads: .

"The provisions of this act, so far as they are substantially the same as existing statutes, shall be construed as continuations thereof, and not as new enactments, and there shall be no implication of a change of intent by reason of a change of words in such statute, unless such change of intent shall be clearly manifest."

Section 295 of the Judicial Code (Comp. St. § 1272) reads:

"The arrangement and classification of the several sections of this act have been made for the purpose of a more convenient and orderly arrangement of the same, and therefore no inference or presumption of a legislative construction is to be drawn by reason of the chapter under which any particular-section is placed."

[5] In construing the Revised Statutes, the presumption is against an intention to change the meaning and construction of a statute re-enacted therein. Mere changes in phraseology arising from a condensation are not to be regarded as changing the pre-existing law. Nor is it to be inferred that Congress, by consolidating or transposing earlier provisions, intended to change their effect, unless an intention to do so is clearly expressed. A change of the law by revision will not be presumed, unless the language in the revision cannot possibly bear the same construction as the revised and repealed act.

In Anderson v. Pacific Co., 225 U. S. 187, 32 Sup. Ct. 626, 56 L. Ed. 1047, the Supreme Court said:

"The change of arrangement, which placed portions of what was originally a single section in two separated sections, cannot be regarded as altering the scope and purpose of the enactment. For it will not be inferred that Congress in revising and consolidating the laws, intended to change their effect, unless such intention is clearly expressed."

In the case of Herrmann v. Edwards, 238 U. S. 107, 35 Sup. Ct. 839, 59 L. Ed. 1224, the Supreme Court said:

"The re-enacted section, in other words, instead of generally stating what was excluded from jurisdiction and then carving out exceptions, as was done in the act of 1888, gave jurisdiction only in the cases where it was intended to give it, and then proceeded to declare that in all other cases within the contemplation of the section there should be no jurisdiction, thus making the lines clear and broad, and leaving no room for controversy or doubt. Aside from this, it is to be, moreover, observed that the intention of Congress to make by the adoption of the Judicial Code so radical a change from the rule which had prevailed for so long a period is not to be indulged in without a clear manifestation of such purpose."

The meaning of the "assignee clause," as it existed in the original Judiciary Act, and ever since, and up to and including the act of 1888, as judicially interpreted, is too well settled to admit the possibility of a successful contention that the mere rearrangement of it in the Judicial Code was designed by Congress to operate such a radical change in its meaning as contended for by the defendant. The doctrine that a revision of a statute does not change the law as originally enacted was also decided by the Supreme Court of Texas in Hartford Fire Insurance Co. v. Walker, 94 Tex. 473, 61 S. W. 711.

There are a multitude of cases in which the "assignee clause" has been applied, and in which jurisdiction was denied; but from an examination of a great number of them it will appear that in all of them the jurisdiction was rested solely on diverse citizenship, and not upon the existence of a federal question.

In the case of Wyman v. Wallace, 201 U. S. 230, 26 Sup. Ct. 495, 50 L. Ed. 738, the facts were that the American and the Union Banks were engaged in business in the city of Omaha, Neb. The American

Bank encountered financial difficulties, and made an arrangement with the Union Bank to finance it. As the result of the transaction certain notes were given, one of which was assigned to Wallace, a citizen of New Hampshire. Wallace sued on the note, and by an amended bill sought on behalf of himself and all creditors of the American Bank, the winding up of the affairs of that bank, the determination of the amount due upon his note, etc. He had not reduced the note to judgment before commencing the suit. Upon a final hearing a decree was entered, ascertaining the amount due Wallace, the plaintiff, and directing a recovery of $97.25 on each share of stock. The same question involved here was presented there. The Supreme Court held that, as the jurisdiction rested on a federal question, the "assignee clause" did not apply. Justice Brewer said in the opinion of the court:

"A matter of jurisdiction is first presented. The note, which is the foundation of plaintiff's suit, is one made by the American Bank to the Union Bank, both located in Nebraska, and under the statute, for the purpose of jurisdiction, to be considered citizens of Nebraska. * * * The plaintiff is a citizen of New Hampshire. He could not maintain an action against the maker of the note, although a citizen of a state other than that of the maker and payee. 25 Stat. 434, § 1. But, if diverse citizenship was the sole basis of the jurisdiction of the Circuit Court, the decision of the Court of Appeals would be final, and there would be no appeal to this court. 26 Stat. 828, § 6. The jurisdiction of the Circuit Court, however, was not invoked on the ground of diverse citizenship—at least not on that alone. The case presented was one arising under the laws of the United States. It was a suit to enforce a special right given by those laws. Section 5220, Rev. Stat., reads: 'Any [national banking] association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock.' By section 5151, Rev. Stat., stockholders in national banks are made liable for 'all contracts, debts and engagements of such association, to the extent of their stock therein, at the par value thereof, in addition to the amount invested in such shares.' Section 2 of the act of June 30, 1876, 19 Stat. 63, is as follows: 'Sec. 2. That when any national banking association shall have gone into liquidation under the provisions of section 5220 of said statutes, the individual liability of the shareholders provided for by section 5151 of said statute may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and of all other creditors of the association, against the shareholders thereof, in any court of the United States having original jurisdiction in equity for the district in which such association may have been located or established.' More than two-thirds of the stock voted, on February 25, 1896, for a voluntary liquidation, and on April 27, 1896, the Comptroller of the Currency formally approved the liquidation and notified the cashier of the American Bank to that effect. In proceeding, therefore, by this suit to enforce in behalf of himself and all other creditors of the American Bank the extra liability imposed by Rev. Stat. § 5151, a case was presented arising under the laws of the United States, and of which, independently of the matter of diverse citizenship, the Circuit Court had jurisdiction."

In the course of Justice Brewer's opinion it will be noted he said:

"He could not maintain an action against the maker of the note, although a citizen of a state other than that of the maker and payee. 25 Stat. 434, § 1.'

The section above cited is the enactment approved August 13, 1888, containing the "assignee clause."

The "assignee clause" was embodied in the original Judiciary Act, which did not confer jurisdiction of any case arising under the Constitution or laws of the United States. Justice Story, in his opinion in

United States v. Greene, supra, decided that the "assignee clause" did not apply to a suit by the United States as assignee; and the case of Commercial National Bank v. Simmons, supra, decided that it did not apply to the case of a national bank, the charter of which authorized it to sue in the federal court.

Congress must have known, when it enacted the original Judiciary Act, that the "assignee clause" was not intended to affect the jurisdiction of cases other than those resting solely on diverse citizenship. So the original intent of the "assignee clause" was only to prescribe an additional requisite of diversity of citizenship. Nothing has transpired since that time that evidences a change of that intent. The case of Wyman v. Wallace, supra, shows that such is now the intent of the enactment.

The jurisdiction of the District Court is therefore sustained.