### SOWELL v. FEDERAL RESERVE BANK OF DALLAS, TEX. *

(Circuit Court of Appeals, Fifth Circuit. December 6, 1923.)

No. 4169.

1. **Courts** &#9756;312(1)—**Assignee clause not applicable to case arising under federal law.**

The assignee clause of Judicial Code. § 24 (Comp. St. § 991), does not apply to a case in which the ground of federal jurisdiction is that the case was one arising under a law of the United States.

2. **Bills and notes** &#9756;422(1)—**Effect of waiver of presentment, notice of nonpayment, and diligence in collecting stated.**

Where a note contained a waiver of presentment, notice of nonpayment, and diligence in collecting *held*, that failure to present the note for nonpayment and notify maker of dishonor did not defeat recovery, in view of Vernon's Ann. Civ. St. Supp. Tex. 1922, arts. 6001—82, 6001—109, 6001—110, 6001—111.

3. **Marshaling assets and securities** &#9756;5—**Scope of doctrine of "marshaling assets" outlined.**

The doctrine of "marshaling assets" applies only to a case of a junior lien holder, who seeks to compel a senior lien holder to exhaust security,

---

which the senior has and which the junior has not access to, and only in cases of a common debtor to two creditors for the protection of the junior creditor.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Marshaling Assets.]

**4. Pledges ⬤⇒58(1)—Doctrine of marshaling assets does not require pledgee to proceed first against other collateral.**

The doctrine of marshaling assets does not require a bona fide holder of negotiable paper, pledged as collateral to an indebtedness, to proceed first against other collateral because of equities alleged to exist between the original parties to the pledged paper.

In Error to the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Action by the Federal Reserve Bank of Dallas, Tex., against D. S. Sowell. Judgment for plaintiff, and defendant brings error. Affirmed.

J. D. Williamson, of Waco, Tex., for plaintiff in error.

E. B. Stroud, Jr., Tom Scurry, and Joseph Manson McCormick, all of Dallas, Tex. (Etheridge, McCormick & Bromberg, and Charles C. Huff, all of Dallas, Tex., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is a writ of error from a judgment for the defendant in error (plaintiff in the District Court) against the plaintiff in error (defendant in that court) for the amount of a promissory note and interest, executed by the defendant, made payable to the National Bank of Cleburne, and by it indorsed to the plaintiff, and pledged as collateral security for an indebtedness in excess of the amount of the note. The National Bank of Cleburne became insolvent, and failed to pay its indebtedness to the plaintiff, which proceeded to collect the note.

Three objections to the recovery were offered in the District Court, and are here insisted upon:

(1) The defendant questioned the jurisdiction of the District Court upon the ground that the plaintiff was an assignee of the note sued on, and his assignee could not have sued the maker upon it in a federal court.

(2) Because the plaintiff, as holder of the note, negligently failed to present it at the place of payment named in it, and negligently failed to notify the maker of its dishonor.

(3) Because the District Court refused to stay the suit until it could be determined whether the other collateral, which the plaintiff held to secure the indebtedness of the National Bank of Cleburne, was sufficient to pay the indebtedness.

[1] 1. Jurisdiction of the District Court was conceded, unless prevented by reason of the operation of the "assignee clause" of section 24 of the Judicial Code (Comp. St. § 991). It was also conceded that the case was one arising under a law of the United States (American Bank & Trust Co. v. Federal Reserve Bank of Atlanta, 256 U. S. 350,

41 Sup. Ct. 499, 65 L. Ed. 983), and that the federal courts would have been without jurisdiction in a suit between the original parties to the note. Jurisdiction depended upon whether the assignee clause applied to a case in which the ground of federal jurisdiction was that the case was one arising under a law of the United States. The plaintiff contends, and the District Court held, that the assignee clause only applied to cases in which federal jurisdiction was acquired by the character of the parties, and not to cases in which it depended upon the character of the subject-matter. The assignee clause appeared in the Judiciary Act of 1789 (1 Stat. 73), and has remained in substantially like form in all subsequent acts. In the act of 1789, federal jurisdiction was conferred only as a result of the character of the parties. The United States, aliens, and citizens of different states alone could sue in the federal courts by its terms. Jurisdiction was not given in cases arising under a law of the United States, except for a brief period, under the Act of February 13, 1801, until the passage of the Act of March 3, 1875. Until that date the assignee clause could not, therefore, have applied to suits arising under the laws of the United States. The courts further limited its application to cases in which aliens and citizens of different states were parties, by eliminating from its scope suits in which the United States were a party. U. S. v. Greene, 26 Fed. Cas. 33, No. 15,258.

Before the Act of March 3, 1875, jurisdiction was denied federal corporations, unless their charters expressly authorized them to sue in the federal courts. When such power was expressly conferred, the courts held the assignee clause inapplicable; the suit being one arising under the laws of the United States. Commercial National Bank v. Simmons, 6 Fed. Cas. 226, No. 3,062; Bank of U. S. v. Planters' Bank of Georgia, 9 Wheat. 904, 6 L. Ed. 244. When general jurisdiction was given the federal courts by the Act of March 3, 1875, over suits arising under laws of the United States, the necessity for express charter authorization to sue in the federal courts was removed, and the assignee clause became inapplicable to the general ground of jurisdiction, as it had been held to be in cases in which jurisdiction was conferred by special charter. In the Act of 1887, as corrected by the Act of 1888, the position of the assignee clause shows the intention of Congress to have been to limit its application to cases in which jurisdiction was acquired because of the character of the parties. It came immediately after them, and before the grant of jurisdiction because the case arose under a law of the United States. The change of the position of this clause in the Judicial Code is not significant of a change in meaning, in view of section 295 of the Judicial Code (Comp. St. § 1272).

The case of Wyman v. Wallace, 201 U. S. 230, 26 Sup. Ct. 495, 50 L. Ed. 738, is at least persuasive. In that case the assignee clause would have prevented jurisdiction from attaching because of diverse citizenship. It was sustained by the Supreme Court upon the idea that the case was one arising under a law of the United States; the Act of June 30, 1876, conferring jurisdiction on the federal courts in cases in which the individual liability of a stockholder of a national

bank was sought to be enforced (as was the case in that case), in addition to a recovery on a note. It is true that the act of Congress conferred jurisdiction of such a proceeding in terms on the federal courts, but if the assignee clause had been held to apply to suits arising under the laws of the United States, it would have operated to defeat the jurisdiction so acquired, for the plaintiff claimed by an assignment and his assignor could not have resorted to the federal courts. The Supreme Court, in effect, held that it did not do so, because jurisdiction was acquired, not because of diverse citizenship, but because the case was a suit arising under the laws of the United States; the assignee clause applying to the former, but not to the latter, ground of jurisdiction.

[2] 2. The note sued on contained a provision that the maker waived protest, notice thereof, and diligence in collecting. This provision was in the body of the note, over the signature of the maker. Section 82, art. 6001a, Tex. St. 1920, provides that:

"Presentment for payment is dispensed with: * * * 3. By waiver of presentment, express or implied."

Section 111 of the same article provides that:

"A waiver of protest, whether in the case of a foreign bill of exchange or other negotiable instrument is deemed to be a waiver not only of a formal protest, but also of presentment and notice of dishonor."

Section 109 of the same article provides that:

"Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied."

Section 110 provides that where the waiver is embodied in the instrument itself, it binds all parties. In view of the waiver of presentment and notice of nonpayment and diligence in collecting, which the defendant signed as maker of the note, we find it unnecessary to determine what, if any, duties as to presentment and notice of dishonor rested upon the plaintiff under the Texas Negotiable Instrument Act.

[3, 4] 3. Defendant's contention that the suit should have been stayed until defendant had exhausted its other collateral is untenable in reason and unsupported by authorities. The doctrine of marshaling assets applies only to the case of a junior lien holder, who seeks to compel a senior lien holder to exhaust security, which the senior has, and which the junior has not access to, and only in cases of a common debtor to two creditors for the protection of the junior creditor. It does not require a bona fide holder of negotiable paper, pledged as collateral to an indebtedness, to proceed first against other collateral, because of equities alleged to exist between the original parties to the pledged paper. The obligation of the maker, as to the bona fide holder, is to pay certainly at a fixed time.' Payment at the fixed time may be vital to the holder of the paper, especially when it is a bank. The rights of the obligors, on the other collateral, could be determined only in a proceeding to which they were all made parties. Such a determination would involve interminable delay and hopeless confusion. No such condition to the payment of the note at maturity entered into

294 F.—51

the obligation of the maker, and to inject it would be to greatly impair the negotiability of commercial paper, the value of which depends upon the assurance of prompt payment at maturity regardless of equities between the original parties. The authorities are opposed to such an application of the doctrine of marshaling the assets. Haas v. Bank of Commerce, 41 Neb. 754, 60 N. W. 85; Citizens State Bank v. Iddings, 60 Neb. 709, 84 N. W. 78; Dallemand v. Bank, 54 Ill. App. 600; Third National Bank v. Harrison (C. C.) 10 Fed. 243.

We find no error in the record, and the judgment of the District Court is affirmed.